UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MARC GOLDBERG,

          *Plaintiff,*

          *-against-*

ERNEST K. JACQUET,

          *Defendant.*

-----------------------------------------------------------X

14 Civ. 1581 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Marc Goldberg ("Plaintiff" or "Goldberg") sued Defendant Ernest K. Jacquet ("Defendant" or "Jacquet"), alleging violations of the New York Labor Law ("NYLL"), unjust enrichment, and promissory estoppel after Goldberg did not receive full compensation for his employment at Passport Brands. Jacquet now moves for summary judgment on all of Goldberg's claims. For the following reasons, the motion is granted.

## BACKGROUND[1]

Goldberg was employed by Passport Brands Inc. ("Passport"), a publicly traded textile and apparel company formerly known as I.C. Isaacs & Company, Inc. Def. 56.1 Statement ¶¶ 1-2. In 2000, Goldberg began working as an independent sales representative for Passport, and in 2002 he became a national sales manager. *Id.* ¶¶ 6-7. In 2002, he signed a sales representation agreement, which was amended in 2006. *Id.* ¶¶ 8-9. In July 2007, Goldberg became Vice

---

[1] These facts are derived from Jacquet's 56.1 Statement and Goldberg's Counter-Statement. The Court recounts only those facts necessary to decide this motion.

1

President of Sales for Men's and Women's at Passport. *Id.* ¶ 12. His 2007 Employment Agreement was signed on behalf of Passport by Robert Stec, Passport's CEO until July 2012. *Id.* ¶¶ 4, 13. That agreement provided for an annual base salary of $325,000. *Id.* ¶ 14.

Jacquet became involved with Passport as an investor in the early 2000s, when he purchased shares of Passport. *Id.* ¶ 28. He obtained a majority interest in approximately 2007. *Id.* ¶ 29. From 2007 through 2014, Jacquet invested approximately $10-12 million in Passport, and became its non-Executive Chairman in 2013. *Id.* ¶¶ 32-33. He never took a salary from Passport nor was he reimbursed for his expenses on Passport's behalf. *Id.* ¶¶ 34-35. His role was to find investors to invest in Passport and otherwise raise money for Passport. *Id.* ¶ 38.

In November 2011, Passport began withholding a portion of Goldberg's salary to cover general business and operating expenses. *Id.* ¶ 56. In April 2012, the parties discussed a revised compensation package for Goldberg but never put any agreement into writing. *Id.* ¶¶ 57-58; Pl. Counter-Statement ¶¶ 57-58. In July 2012, Goldberg and Passport again sought to amend Goldberg's compensation package, but no agreement was reached and the draft agreement was never signed. Def. 56.1 Statement ¶¶ 59-60; Pl. Counter-Statement ¶¶ 59-60.

Goldberg agreed to delay the normal payroll, and then agreed to accept a reduced wage and be repaid when Passport received additional cash. Def. 56.1 Statement ¶¶ 62-63. Goldberg asserts that this agreement was coerced because he was repeatedly told that if he did not agree, the company would fold and he would be terminated. Pl. Counter-Statement ¶¶ 62, 65, 68, 70, 72, 96. In July 2012, the amount withheld from Goldberg's salary increased. Def. 56.1 Statement ¶ 65. The management team, including Plaintiff, tentatively agreed to take a 20-25% deferral in base pay to improve Passport's cash flow, after it was guaranteed that they would be repaid, if Passport became profitable. *Id.* ¶ 66. Goldberg disputes that he ever agreed to this

2

deferral. Counter-Statement ¶ 66. In November 2013, the amount of wages withheld increased again. Def. 56.1 Statement ¶ 69. On May 8, 2014, Robert Arnot, then CEO of Passport, terminated all Passport employees, including Goldberg. *Id.* ¶¶ 76-77.

## DISCUSSION

### I. Applicable Law

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 192 (2d Cir. 2014) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Where the moving party has made an initial showing that no genuine issue remains, the nonmoving party must present specific evidence in support of its contentions that a genuine dispute exists, Fed. R. Civ. P. 56(e), and cannot rest on "[c]onclusory allegations, conjecture, and speculation," *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citations and internal quotation marks omitted). The Court resolves all ambiguities and draws all reasonable inferences against the movant. *Pandora Media, Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 785 F.3d 73, 77 (2d Cir. 2015) (citation and internal quotation marks omitted).

### II. Analysis

Goldberg does not oppose Jacquet's motion for summary judgment on the claims for unjust enrichment (Count 2) and promissory estoppel (Count 3). Pl. Mem. at 1 n.1. The motion is granted with respect to those claims. Goldberg's complaint does not allege specific violations of the NYLL, so Jacquet moves for summary judgment on the claims under §§ 191,[2] 193, and

---

[2] Goldberg does not dispute that there is no viable claim under § 191. Pl. Mem. at 8.

3

198-b[3] of the NYLL. Def. Mem. at 7-12. Goldberg argues that Jacquet is not entitled to summary judgment because the record demonstrates that Jacquet made unlawful deductions from Goldberg's salary in violation of NYLL § 193 and required unlawful kickbacks in violation of NYLL § 198-b, and that Jacquet has failed to meet his burden of showing no material facts are in dispute. Pl. Mem. at 4-8.

## A. Unlawful Deductions in Violation of NYLL § 193

Under NYLL § 193, "[n]o employer shall make any deduction from the wages of an employee, except deductions which . . . are expressly authorized in writing by the employee and are for the benefit of the employee." Jacquet argues that the payments withheld from Goldberg do not constitute deductions and are instead a failure to pay wages not addressed by § 193. The Court agrees.

"[T]he majority, and more persuasive, interpretation of § 193 is that it 'has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages.'" *Malinowski v. Wall Street Source, Inc.*, 2012 WL 279450, at *3 n.5 (S.D.N.Y. Jan. 31, 2012) (quoting *Monagle v. Scholastic, Inc.*, 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007)); *accord Moras v. Marco Polo Network, Inc.*, 2012 WL 6700231, at *11 (S.D.N.Y. Dec. 20, 2012) (no unlawful deduction claim where employee was paid less than agreed-upon salary). "[A] 'deduction' is more targeted and direct than the wholesale withholding at issue here," and "New York courts recognize that the purpose of section 193 is to 'place the risk of loss for such things as damaged or spoiled merchandise on the employer rather

---

[3] Jacquet originally did not address § 198-b, but following Goldberg's assertion that the record demonstrates a violation of § 198-b, Jacquet seeks summary judgment on claims under that section as well.

4

than the employee.'" *Gold v. Am. Med. Alert Corp.*, 2015 WL 4887525, at *5 (S.D.N.Y. Aug 17, 2015) (quoting *Hudacs v. Frito-Lay, Inc.*, 90 N.Y.2d 342, 349 (1997)).

Goldberg argues that the Complaint adequately alleges, and the record sufficiently reflects, that there were *specific* deductions from his compensation. Pl. Mem. at 4-6. But the Court rejects Goldberg's attempt to portray the withholding of his wages as a deduction, as this would sanction a skewed interpretation of § 193. *See, e.g.*, *Gold*, 2015 WL 4887525, at *2 ("Section 193 requires something more [than the total withholding of wages]: a specific instance of *docking* the employee's pay") (emphasis added). The cases cited by Goldberg are not to the contrary. *See Monagle*, 2007 WL 766282, at *2; *Kletter v. Fleming*, 820 N.Y.S.2d 348, 350 (N.Y. App. Div. 3d Dep't 2006). And Goldberg's effort to explain why his allegations of deductions are different from a failure to pay wages is meritless. Pl. Mem. at 6 n.3. That a New York Court has defined a deduction as "literally [] an act of taking away or subtraction" from the amount of wages paid to an employee, *see Angello v. Labor Ready, Inc.*, 7 N.Y.3d 579, 584 (N.Y. 2006), does not mean that the Court must interpret the failure to give full wages as a deduction when it is, in truth, a withholding.

The record demonstrates that Goldberg did not receive wages to which he is entitled, but it also reflects that he did not have wages deducted in the manner intended to be prohibited by § 193. Accordingly, Jacquet is entitled to summary judgment on Goldberg's claim under NYLL § 193.

### B. Unlawful Kickbacks in Violation of NYLL § 198-b

NYLL § 198-b provides that it is "unlawful for any person . . . to request, demand, or receive . . . a return, donation, or contribution of any part or all of said employee's wages [or] salary, . . . upon the statement, representation, or understanding that failure to comply with such

request or demand will prevent such employee from procuring or retaining employment." Goldberg argues that there is a genuine dispute over whether Jacquet violated this statute, because the statute "is violated whenever an employee is in essence deprived by an employer of part of his agreed upon wages, irrespective of how such deprivation is effected or of whether money deducted was ever in employee's possession." Pl. Mem. at 7 (citing *Falzia v. Meyer*, 3 N.Y.S.2d 870, 874 (N.Y. Mag. Ct. 1938)). Goldberg asserts that because he was under threat of termination if he refused to accept lower wages, Jacquet's conduct constitutes a violation of § 198-b and that Jacquet has failed to demonstrate that there is not a genuine dispute over this claim. *Id.* at 6-8.

The cases cited by Goldberg do not suggest that the conduct here is a violation of the anti-kickback statute. The Court acknowledges Goldberg's argument that he was under duress to consent to the receipt of lower wages—he was told that if he did not, he would be terminated. Even so, there is no other indication that any failure to pay Goldberg was a kickback. Courts have found violations of the anti-kickback statute where employers required fees to be taken out of employees' wages on threat of termination, or where employers required employees to purchase certain items necessary for their employment with their own wages. *See Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 2015 WL 1285960, at *18 n.8 (E.D.N.Y. Mar. 19, 2015) (citing cases). No case has found the conduct at issue here, the withholding of wages based on a general "threat" that the company would fold and the employee would be terminated if the wages were not withheld, to constitute a kickback, and the Court declines to find so here.

As stated above, it is clear from the record that Goldberg was not paid money to which he was entitled. But it is also clear that Goldberg's case seeks to fit a square peg into a round hole in order to find a violation of the NYLL. The Court declines to accept these skewed interpretations of the relevant statutes, and finds that as a matter of law the conduct at issue here does not violate either §§ 193 or 198-b of the NYLL.

## CONCLUSION

For the foregoing reasons, Jacquet's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment and terminate this matter.

Dated: New York, New York
August 31, 2015

SO ORDERED

*/s/ Paul A. Crotty*

PAUL A. CROTTY
United States District Judge